UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOHN FLYNN *et al.*, | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-0396 (RMU) |
| v. | : | Re Document No.: | 6 |
| OLD WORLD PLASTER, LLC, | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

### GRANTING THE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

## I. INTRODUCTION

This matter is before the court on the plaintiffs' motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). The plaintiffs are the fiduciaries of the Bricklayers and Trowel Trades International Pension Fund and the International Masonry Institute (collectively, "the Plans"), which are "employee benefit plans" and "multiemployer plans" within the meaning of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. The plaintiffs commenced this action on February 26, 2009, alleging that the defendant failed to make contributions to the Plans as required by ERISA and the applicable collective bargaining agreements. The plaintiffs served the defendant with a copy of the complaint on April 29, 2009. To date, the defendant has not responded to the complaint or otherwise participated in this action. As a result, the court grants the plaintiffs' motion for default judgment and awards them $252,058.66 in damages.

## II. FACTUAL & PROCEDURAL BACKGROUND

The complaint states that representatives of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions entered into a collective bargaining agreement with the defendant. Compl. ¶ 8. Pursuant to the agreement, the defendant was required to provide monthly reports to the plaintiffs' representatives and remit regular contributions to the Plans based on the number of hours worked by the defendant's unionized employees. *Id.* ¶ 9; *see generally* Compl., Ex. A ("CBA"). The plaintiffs assert that the defendant failed to make monthly payments to the Plans, in violation of the collective bargaining agreement and ERISA. Compl. ¶¶ 1, 11, 14.

The plaintiffs allege that an independent accounting firm performed an audit of the defendant's books and records and determined that during the period from January 2003 through December 2004,[1] the defendant failed to submit the required reports and contributions to the Plans. *Id.* ¶ 11. According to the plaintiffs, the unpaid contributions for this period total $12,983.99. *Id.* ¶ 12. The plaintiffs further allege that although the defendant did provide monthly reports for May 2006 and February 2007 through April 2008, it failed to make $123,213.72 in required contributions for those months. *Id.* ¶¶ 14-15.

On February 26, 2009, the plaintiffs initiated this action to recover delinquent contributions to the Plans. *See generally id.* The plaintiffs also seek interest on the delinquent

---

[1] Although the claims arising out of the period from January 2003 to December 2004 could be barred by the three-year statute of limitations applicable to ERISA claims in this district, *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991), the statute of limitations is not a jurisdictional issue and the court will not address it *sua sponte*, *Day v. McDonough*, 547 U.S. 198, 205 (2006) (stating that "[a] statute of limitations defense . . . is not 'jurisdictional,' hence courts are under no obligation to raise the time bar *sua sponte*"); *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) (observing that "[i]f a defendant fails to assert the statute of limitations defense, the district court ordinarily should not raise it *sua sponte*").

contributions, liquidated damages, attorney's fees and costs. *Id.* ¶¶ 18-19.

On April 29, 2009, the plaintiffs served the defendant with the summons and complaint. Pls.' Aff. of Service. After the defendant failed to submit a timely response to the complaint, the Clerk of the Court entered default against the defendant on June 10, 2009. Entry of Default. Consistent with Federal Rule of Civil Procedure 55, the plaintiffs then filed this motion for default judgment on May 21, 2010. *See generally* Pls.' Mot. Throughout this period, the defendant has not pleaded or otherwise defended itself against this action.

## III. ANALYSIS

### A. Legal Standard for Entry of Default Judgment Under Rule 55(b)(2)

Federal Rule of Civil Procedure 55 specifies a two-step process for a party seeking to obtain a default judgment. First, the plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend" against an action. FED. R. CIV. P. 55(a). Second, if the plaintiff's claim is not for a "sum certain," the party must apply to the court for an entry of default judgment. *Id.* 55(b)(2). This two-step process gives a defendant an opportunity to move to set aside a default before the court enters judgment. *Id.* 55(c); *see also H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (stating that "[t]he notice requirement contained in Rule 55(b)(2) is . . . a device intended to protect those parties who, although delaying in a formal sense by failing to file pleadings . . . have otherwise indicated to the moving party a clear purpose to defend the suit").

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics. *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Rule 55(a) of the Federal Rules of Civil Procedure

provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. *Id.* 55(b)(2).

Because courts strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Accordingly, default judgment usually is available "only when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id.* at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr. 13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) (noting that "default concludes the liability phase of the trial"). Default does not, however, establish liability for the amount of damage that the plaintiff claims. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F. Supp. 486, 491 (D.D.C. 1994), *vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty). The court has considerable latitude

in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). To fix the amount, the court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

### B. The Court Grants the Plaintiffs' Motion for Entry of Default Judgment

#### 1. The Defendant is Liable to the Plaintiffs

The plaintiffs assert that default judgment is appropriate in this case given the defendant's failure to respond to the complaint or otherwise defend itself against this action. Pls.' Mot. at 2. As previously noted, the plaintiffs served the defendant with a copy of the complaint on April 29, 2009. *Id.* at 1. Having concluded that the defendant failed to plead or otherwise defend itself against the action, the Clerk of the Court entered default on June 10, 2009, pursuant to Federal Rule of Civil Procedure 55. *Id.*, Ex. C. Since that time, the defendant has not responded to either the initial complaint or this motion, despite being served with copies of both documents. *See generally* Pls.' Mot. Given the defendant's failure to respond, the entry of default judgment is appropriate. *See, e.g.*, *H. F. Livermore Corp.*, 432 F.2d at 691 (holding that default judgment is appropriate when "the adversary process has been halted because of an essentially unresponsive party").

The defendant's default constitutes an admission of liability for the well-pleaded allegations in the complaint. *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002); *see also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds,* 403 U.S. 363 (1973). ERISA requires that "[e]very employer who is obligated to

make contributions to a multiemployer plan . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The plaintiffs allege that the defendant failed to make contributions to the employee benefit plans as required by the parties' collective bargaining agreements. Compl. ¶¶ 11, 14. Accordingly, the court deems these well-pleaded allegations admitted and must now determine the appropriate relief.

**2. The Plaintiffs Are Entitled to Monetary Relief in the Amount of $252,058.66**

The plaintiffs claim that the defendant's failure to make the required contributions to the employee benefit plans entitles them to a total of $252,058.66 in monetary relief. Pls.' Mot. at 1. Specifically, the plaintiffs request: (1) $12,983.99 in delinquent contributions for the period between January 2003 through December 2004; (2) $2,692.06 in interest payable on the delinquent contributions for the period between January 2003 through December 2004, calculated at a rate of fifteen percent per annum through April 21, 2005; (3) an additional $2,692.06 in interest calculated in the same manner, for delinquent contributions for the period between January 2003 through December 2004; (4) $123,213.72 in delinquent contributions for May 2006 and the months of February 2007 through April 2008; (5) $51,443.09 in interest payable on the delinquent contributions for May 2006 and the months of February 2007 through April 2008, calculated at a rate of fifteen percent per annum through April 26, 2010; (6) an additional $51,443.09 in interest calculated in the same manner, for delinquent contributions for May 2006 and the months of February 2007 through April 2008; (7) $350.00 in filing fees; (8) $181.85 representing the process server's fee; (9) $570.30 for the cost of conducting an audit; and (10) $6,488.50 in attorney's fees. *See generally* Pls.' Mot., Ex. B (Decl. of Charles Mehler III ("Mehler Decl.")).

ERISA provides that, in an action brought by a fiduciary of an employee benefit plan

6

under 29 U.S.C. § 1145, the court shall award the plan:

>    (A) the unpaid contributions,
>    (B) interest on the unpaid contributions,
>    (C) an amount equal to the greater of –
>        (i) interest on the unpaid contributions, or
>        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court in subparagraph (A),
>    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>    (E) such legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Addressing each of these provisions in order, ERISA first entitles the plaintiffs to the defendant's unpaid contributions. *Id.* § 1132(g)(2)(A). The plaintiffs' entitlement to delinquent contributions is derived from two sources. *See* Pls.' Mot., Ex. A (Decl. of David Stupar ("Stupar Decl.")) ¶¶ 8-12. First, the plaintiffs are entitled to $12,983.99 in delinquent contributions discovered during an audit of the defendant's books and records for the period from January 2003 through December 2004. *See Fanning v. Big Warrior Corp.*, 2010 WL 1573807, at *4 (D.D.C. Apr. 21, 2010) (granting the plaintiff unpaid contributions discovered during an audit). Second, the plaintiffs are entitled to unpaid contributions for the months of May 2006 and February 2007 through April 2008. *See* 29 U.S.C. § 1132(g)(2). Using the reports provided by the defendant for those months, the plaintiffs have calculated that the defendant failed to make $123,213.72 in contributions for this period. Stupar Decl. ¶¶ 8-9.

The court accepts the plaintiffs' calculation of delinquent contributions as both reasonable and accurate. Accordingly, the court awards the plaintiffs $12,983.99 in delinquent contributions for the period of January 2003 through December 2004 and $123,213.72 in delinquent contributions for the months of May 2006 and February 2007 through April 2008,

yielding a total sum of $136,197.71.

ERISA also entitles the plaintiffs to interest on the defendant's unpaid contributions. 29 U.S.C. § 1132(g)(2)(B). The Trustees of the Plans adopted collection procedures that govern the collection of delinquent employer contributions. Stupar Decl. ¶ 4. These procedures set the interest rate on delinquent contributions at fifteen percent per annum. *See* Compl. ¶¶ 13, 16; Stupar Decl. ¶ 5; Stupar Decl., Ex. 1. Applying this interest rate, the plaintiffs have calculated that the defendant owes interest in the amount of $2,692.06 on the delinquent contributions for period January 2003 through December 2004. Stupar Decl. ¶ 13; Mehler Decl. ¶ 4. This amount is calculated from the due date of the unpaid contributions through April 21, 2005. *Id.* The plaintiffs have also calculated that the defendant owes interest in the amount of $51,443.09 on the delinquent contributions for May 2006 and the months of February 2007 through April 2008.[2] Stupar Decl. ¶ 10; Mehler Decl. ¶ 4. The court grants the plaintiffs' request for interest on the delinquent contributions for both periods in the total amount of $54,135.15.

Pursuant to 29 U.S.C. § 1132(g)(2)(C), the court also grants the plaintiffs' request for an additional interest award of $54,135.15. *See* 29 U.S.C. § 1132(g)(2)(C) (stating that a successful plaintiff is entitled to an additional award in the amount of the interest on the unpaid contributions if that amount is greater than the liquidated damages provided for in the plan). Furthermore, the plaintiffs are entitled to recover their filing fees and service costs in the amounts of $350.00 and $181.85, respectively. *See id.* § 1132(g)(2)(D). The plaintiffs are also entitled to recover $570.30 in costs incurred in connection with the independent audit of the defendant's books and records. *See* CBA, Art. XVII, § 9 (providing that "an Employer

---

2   This interest amounts are calculated from the due date of the unpaid contributions through April 26, 2010. Stupar Decl. ¶ 4; Mehler Decl. ¶ 4.

determined to be delinquent in its payments . . . may be liable for . . . audit fees and other expenses incurred incidental to collection of contributions due to the Fund"); *cf.* 29 U.S.C. § 1132(g)(2)(E) (providing that plaintiffs are entitled to recover "such legal or equitable relief as the court deems appropriate").

Finally, the court must determine whether the plaintiffs' request for attorney's fees is reasonable. 29 U.S.C. § 1132(g)(2)(D). The court concludes that the plaintiffs' request for $6,488.50 in attorney's fees is reasonable based on the itemized billing schedule provided by the plaintiffs' counsel. *See* Mehler Decl. ¶ 14.

In total, the court awards the plaintiffs monetary relief in the amount of $252,058.66.

### IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for default judgment. The defendant shall pay $252,058.66 representing unpaid contributions, interest, damages, costs and attorney's fees. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 4th day of October, 2010.

RICARDO M. URBINA
United States District Judge